**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-08125-001-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Fernando Bishop Martinez, | |
| Defendant. | |

Before the Court is the Defendant's Motion to Strike Special Condition No. 7 of his supervised release conditions. (Doc. 80). The Government has filed a Response opposing the Motion. (Doc. 81) The Defendant has filed a Reply. (Doc. 82). Upon consideration of the same, the Court will modify Special Condition No. 7 for the reasons set forth below.

Background

On June 4, 2019, a federal grand jury indicted the Defendant with Possession with Intent to Distribute Methamphetamine (21 U.S.C. §§ 841(a)(1), (b)(1)(C) and (b)(1)(B)(viii). On June 30, 2020, the Defendant pleaded guilty to Count Six of the Indictment, Possession with Intent to Distribute Methamphetamine. Therein, he admitted to possessing approximately 27.4 grams of pure methamphetamine which he sold to another. (Doc. 67). The investigation revealed that he became known to federal law

enforcement who were targeting drug traffickers on the Navajo Nation. A confidential informant conducted multiple controlled purchases of methamphetamine from the Defendant, some of which were within a purity level of 80% ice. (Doc. 73). The Defendant was found culpable for a total of 40.58 grams of ice and 18.8 grams of a mixture containing methamphetamine. The parties agreed that the Defendant would be sentenced to a term of imprisonment not greater than the middle of his final adjusted sentencing guideline range. (Doc. 67 at 2). On October 20, 2020, the Court sentenced the Defendant to a forty-six month term of imprisonment followed by three-years on supervised release. (Doc. 78). The Court also imposed special conditions of supervised release upon the Defendant to include Special Condition No. 7 "You must not travel to the Navajo Reservation during your term of supervision and the probation officer will verify compliance." (*Id*. at 4). The Court must decide whether the geographic restriction contained in the Court's special condition deprives Defendant Martinez of his constitutional liberties to an extent that is greater than reasonably necessary.

Law

A district court has broad, though not unfettered, discretion when setting conditions of supervised release. *United States v. Bee*, 162 F.3d 1232, 1234 (9th Cir. 1998). A district court may order a special condition of supervised release so long as the condition is: (1) reasonably related to the crime, the defendant's history and characteristics, and the purposes of supervised release, including deterrence, public protection, and treatment of the offender; (2) involves no greater deprivation of liberty than is reasonably necessary; and (3) consistent with the Sentencing Commission's pertinent policy statements. *United*

*States v. Gnirke*, 775 F.3d 1155, 1161 (9th Cir. 2015) (quoting 18 U.S.C. §§ 3553(a), 3583(d)).

Under this statutory framework, a condition of supervised release is permissible if it is reasonably related "to the goals of deterrence, public protection, and rehabilitation." *United States v. Weber*, 451 F.3d 552, 558 (9th Cir. 2006). So long as the condition satisfies one of these goals, it "need not relate to the offense of conviction." *Id.* Additionally, the condition must impose "no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release." *Id.* (internal quotations omitted). Whether a particular special condition of supervised release is reasonable will depend on "whether the record as a whole reflects rational and meaningful consideration of the relevant factors." *United States v. Rudd*, 662, F.3d 1257, 1261 (9th Cir. 2011). Because district courts have the evidence at their disposal and their own impressions of a defendant, they have wide latitude when crafting special conditions of supervised release. *See United States v. Weber*, 451 F.3d 552, 557. However, when a condition implicates a significant liberty interest, "a district court must support its decision on the record with evidence justifying the condition." *United States v. Daniels*, 541 F.3d 915, 924 (9th Cir. 2008).

Congress explicitly authorized district courts to impose special conditions of supervised release mandating that a defendant refrain from living in or traveling to a particular area. 18 U.S.C. § 3563(b). Therefore, "[i]t is well settled that a district court may impose a geographic or residency restriction when it is properly supported by the record and substantively reasonable." *United States v. Many White Horses*, 964 F.3d 825, 827 (9th Cir. 2020) (citing *United States v. LaCoste*, 821 F.3d 1187, 1192-93 (9th Cir. 2016). In

specific cases, courts have found that geographic and residency restrictions are reasonably related to the purposes of supervised release when they: (1) prevent the defendant from returning to a geographic location at which he engaged in a clear pattern of destructive behavior; (2) intend to keep an offender away from circumstances or individuals that may lead him to re-offend; or (3) aim to address rehabilitation and public safety in light of defendant's pattern of destructive behavior. *See Many White Horses*, 964 F.3d at 830; *United States v. Watson*, 582 F.3d 974, 983 (9th Cir. 2009); *United States v. Ross*, 476 F.3d 719, 722 (9th Cir. 2007).

In *Many White Horses*, the special condition prevented the appellant from living in the town of Browning, Montana. *Many White Horses*, 964 F.3d at 827. The appellant previously pled guilty to conspiracy to possess with intent to distribute methamphetamine, was an enrolled tribal member, the town was within his tribe's reservation boundaries, and the condition was imposed after he violated his supervised release terms nine times. *Id.* Because he demonstrated a clear pattern of destructive behavior in the town following his release, the restriction applied to one town, he could visit the town with his parole officer's approval, and could live near his family in a different town on the reservation, the Ninth Circuit found that the special condition did not unreasonably deprive the appellant of his liberty. *Id.* at 830-31.

Similarly, in *United States v. Watson*, the special condition did not involve a deprivation of liberty greater than was reasonably necessary when the geographic restriction prevented the appellant from living in the City of San Francisco and allowed visits with his parole officer's permission. *United States v. Watson*, 582 F.3d 974, 984 (9th

Cir. 2009). Contrastingly, in *LaCoste*, the special condition preventing the appellant from residing in a four-county area was not reasonably related to protecting the community or preventing future criminal conduct. *LaCoste*, 821 F.3d at 1193. Because the past criminal conduct occurred in only two of the four counties, the "banishment" condition could not be upheld. *Id.*

      Analysis

As an initial matter, the Defendant claimed to be a member of the Navajo Nation. The Navajo Nation Office of Vital Records, however, confirmed that he is not a Navajo Nation tribal member nor is he eligible for tribal enrollment. (Doc. 75). The record reflects that the Defendant was born and raised in Illinois, where he lived until approximately age 27 when he moved to Cameron, Arizona, then he moved to Page, Arizona. He moved to Tuba City, Arizona (on the Navajo Nation) approximately two-years prior to the investigation into his drug distribution crimes. The Defendant has older adolescent/young adult children who are enrolled members of the Navajo Nation and at time of sentencing, he was estranged from his wife, also a member of the Navajo Nation. (*Id.*) The Defendant also admitted to using methamphetamine from 2001 up through his arrest in this case. In imposing Special Condition No. 7, the Court, at sentencing considered the Defendant's targeted acts of selling methamphetamine in Tuba City, the impact of methamphetamine to the Navajo community and its impact on crime. The Court also considered that the Defendant recently moved to Tuba City prior to engaging in drug sales there and thus sought to discourage returning to the area of his crimes. It also considered that the Defendant is not an enrolled member of the Navajo Nation.

Martinez argues that the special condition is not justified by his criminal history. He points out that his criminal history is less "reckless" than the criminal histories of the geographically restricted defendants in child molestation cases. (Doc. 82 at 3-4). Further, Martinez contends that the facts here are distinguishable from those in *Watson* because, unlike the appellant in that case, Martinez has children living on the Reservation. (*Id.* at 4). Additionally, unlike the special condition in *Watson*, the condition here does not allow for visitation upon his parole officer's approval. (*Id.* at 5). Martinez asserts that there is not a reasonable nexus between the crimes committed and his being restricted from living on the Reservation. (*Id.* at 6). To support this contention, he points to the fact that methamphetamine addiction and distribution is widespread. (*Id.*) Thus, if he intends to use and distribute upon release, it will not matter where he lives. (*Id.* at 7). Finally, Martinez argues that if the special condition is not stricken, it should be modified. (*Id.*)

The Government counters, however, that the record shows that the special condition is appropriately tailored and reasonably necessary to deter criminal conduct, protect the public, and rehabilitate Martinez. (Doc. 81 at 3). To support this contention, the Government points out that Martinez sold methamphetamine "multiple times over the course of one year solely within the confines" of the Reservation. (*Id.* at 4). Further, the Government emphasizes the fact that the special condition does not prevent Martinez from seeing his children, only from traveling to the Reservation because that is where he committed his crimes. (*Id.*)

The special condition completely restricting Martinez from traveling to the Reservation for three years may be too geographically broad. While this Court has the

authority to impose special conditions restricting an offender's residence and travel, such restrictions must be reasonable as demonstrated by the entire record. Ninth Circuit Court cases upholding geographic restrictions generally point to limited geographic scope and ability to visit as justifications for finding that the condition involves no greater deprivation of liberty than is reasonably necessary. Moreover, cases involving geographically broad and absolute restrictions require more than general justifications of protecting the community and preventing further criminal conduct.

Here, the special condition prevents Defendant Martinez from traveling to the Reservation for three years. The Navajo Nation has a land base of 27,413 square miles. In *LaCoste*, the Ninth Circuit vacated the residency restriction expanding across four counties, which encompassed 8,904 square miles in total. (Linn County: 2,309 sq. miles; Benton County: 679 sq. miles; Lane County: 4,722 sq. miles; Marion County: 1,194 sq. miles). The court found that the restriction was overbroad. Thus, the Court finds that a more restrictive approach is warranted here.

The Court notes that the Defendant had lived with his children in Cameron, Arizona, also on the Navajo Nation. Thus, the Court will modify Special Condition No. 7 to state: "You must not travel to or through Tuba City, Arizona on the Navajo Reservation during your term of supervision and the probation officer will verify compliance." Such a modification will protect the community which the Defendant conducted his drug sales transactions.[1] Such a condition will not interfere with the Defendant visiting his children.

---

[1] The Court also notes that co-defendant Chee is a resident of Tuba City, Arizona. *See* (Doc. 55).

Yet, it will protect the community from any prospect of the Defendant reengaging with his co-defendant's or previous customers in the Tuba City area of the Navajo Nation. Accordingly,

**IT IS ORDERED** denying the Defendant's Motion to Strike (Doc. 80).

**IT IS FURTHER ORDERED** modifying the Judgment and Commitment Order, Special Conditions of Supervised Release No. 7 to state:  **You must not travel to or through Tuba City, Arizona on the Navajo Reservation during your term of supervision and the probation officer will verify compliance**.

Dated this 17th day of November, 2021.

Honorable Diane J. Humetewa
United States District Judge